**In the Matter of the ESTATE of Henry Martin SAMEK, Deceased.**

**Gene SAMEK, Administrator, Appellee,**

**v.**

**Lillian SCHULTZ a/k/a Mrs. W. C. Schultz, Appellant.**

**No. 55988.**

Supreme Court of Iowa.

Dec. 19, 1973.

serted the money belonged to the estate and was wrongfully in the possession of Mrs. Schultz. The court granted the application and the examination followed.

Mrs. Schultz testified she was decedent's only sister and attended to all his business when he was hospitalized by terminal illness. She testified on February 26, 1971 ("on the day he died"), she went to the bank and withdrew the $1500 in question by writing a check for which the bank gave her cash. Until that date this checking account was in decedent's name alone. The joint account signature card was obtained from the bank by Mrs. Schultz, allegedly signed by decedent by use of a mark witnessed by his attending physician, and signed by Mrs. Schultz. She then returned it to the bank on the day of Samek's death.

Mrs. Schultz, on the stand, claimed to be the owner of the funds withdrawn by her from the bank.

By its first ruling the district court found Mrs. Schultz asserted decedent made a gift of money to her which she claimed as her own property; concluded a controversy existed over the ownership of the checking account and ordered the proceeding terminated. A few days later, the court filed another order expunging the previous one and ordering Mrs. Schultz's attorney (who had the controverted fund in his possession) to file a bond for $1500 to secure delivery of that sum to the administrator. In a final judgment order several months later the court concluded the events surrounding the purported gift and transfer were "not sufficient to establish a controversy." The court ordered the $1500 plus interest be returned to the administrator and assessed costs to Mrs. Schultz.

I. Mrs. Schultz contends district court should not have ruled the evidence was insufficient to establish a controversy as to the ownership of the checking account funds.

Section 633.112, The Code, is merely a discovery statute. It provides the estate's representative an easy, inexpensive means

---

Sheridan, Sheridan & Mellick, Ltd., Waukon, for appellant.

Kathleen Neylan, Elkader, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REYNOLDSON, Justice.

We must decide in this case whether the district court in a statutory probate discovery proceeding had jurisdiction to order certain property delivered to the estate, and to assess costs against the person who claimed the property.

Henry Samek died intestate. The administrator of his estate made application pursuant to § 633.112, The Code, for court order directing Lillian Schultz (appellant here) to appear for examination relating to certain monies. The administrator as-

to obtain possession of all the property of the deceased. See Kanealy v. Heiserman, 244 Iowa 708, 57 N.W.2d 799 (1953); Duro v. Ladd, 235 Iowa 185, 16 N.W.2d 244 (1944); Barto v. Harrison, 138 Iowa 413, 116 N.W. 317 (1908).

The law is clear, however, once it is established a controversy exists, other proceedings must be brought to determine the ownership of the contested property. See Kanealy v. Heiserman, supra, 244 Iowa at 713, 57 N.W.2d at 802; Findley v. Jordan, 222 Iowa 46, 47, 268 N.W. 515, 516 (1936); In re Estate of Brown, 212 Iowa 1295, 1299, 235 N.W. 754, 756 (1931); Barto v. Harrison, supra, 138 Iowa at 418, 116 N.W. at 319; Rickman v. Stanton, 32 Iowa 134, 136–37 (1871); Smyth v. Smyth, 24 Iowa 491, 492–493 (1868). See also 33 C.J.S. Executors and Administrators § 159, pp. 1123–1126.

The difficult question is, of course, what constitutes a controversy? The general rule which may be distilled from the above cases is that it requires only a modicum of evidence establishing a good-faith dispute over the contested property to deprive the court of jurisdiction to determine ownership in a § 633.112 proceeding. We have said unless it appears *beyond controversy* that the person being examined has wrongful possession the court has no authority to determine the question of ownership. In re Estate of Hoffman, 227 Iowa 973, 289 N.W. 720 (1940).

After examining the record before us, we conclude there is a controversy whether the funds from the bank account belong to the estate or Mrs. Schultz. In addition to asserting ownership of the funds, the latter offered into evidence the joint account signature card purporting to carry the mark of the decedent witnessed by his attending physician.

The district court, in discounting the signature card as evidence of a controversy over title, stated:

"It is well known many people have other people's signatures on signature cards for convenience. The signature card does not necessarily establish title to the funds. It is well known one may have an account in his own name alone with several signatories on the account with authority to withdraw funds. It is also well established a person may establish a joint tenancy account which obligates the bank to pay the funds to survivors by mere designation of the account and I think signatories does not establish title to the funds and we have many cases on this."

In Williams v. Williams, 251 Iowa 260, 100 N.W.2d 185 (1959) this court held that if the survivorship language is clear and unequivocal the signature card is conclusive as to the parties' intent to establish a joint account, and cannot be changed by parol evidence except in a situation involving fraud, duress or mistake. But if the survivor is in a confidential relationship with the decedent the burden of proving that the account arrangement was voluntarily established shifts to the survivor. Oehler v. Hoffman, 253 Iowa 631, 113 N.W.2d 254 (1962); Luse v. Grenko, 251 Iowa 211, 100 N.W.2d 170 (1959). The administrator argues that Mrs. Schultz was in a confidential, dominant relationship with decedent. There was also testimony concerning the circumstances surrounding the signing of the joint account card which would indicate the mark designated as "his mark" on the card may not have been made by decedent. However, it was not the function of the district court in this § 633.112 proceeding to decide these issues—its function was merely to determine if any issues existed. Nor do we intend by anything said here to adjudicate those matters.

The signature card coupled with the assertion of ownership established sufficient controversy to require the administrator to litigate ownership of the property in a regular proceeding. The parties will thus be afforded due process and provided

the benefits of our adversary system, including pleadings and full-scale discovery.

 II. Mrs. Schultz also contends district court wrongfully ordered that the funds be delivered to the administrator and assessed the costs of the proceeding against her. Our holding reached in Division I answers the first of these assigned errors. As there was a controversy, the court had no jurisdiction to make disposition of the property. The costs follow, and both here and below are assessed to the estate.

The district court's decision is reversed and remanded for further proceedings in conformance herewith.

Reversed and remanded.